IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Randy Smith, | ) | Civil Action No.  2:14-cv-03424-TMC-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting | ) | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The Plaintiff, Randy Smith, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

Plaintiff was 44 years old on his amended alleged disability onset date of September 30, 2009. (R. at 68, 75.) He alleged disability due to L4-L5 radicular syndrome with bilateral peroneal nerve neuropathy, lumbar stenosis, and lumbar spondylosis. (R. at 70.) Plaintiff has a high school education and past relevant work as a forklift operator and warehouse loader. (R. at 75.)

Plaintiff protectively filed an application for DIB and SSI on March 9, 2011. (R. at 68.) His applications were denied initially and on reconsideration. (R. at 68.) After a hearing before an Administrative Law Judge (ALJ) on December 7, 2012, the ALJ issued a decision on April 19, 2013,

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

in which the ALJ found that Plaintiff was not disabled. (R. at 68-77.) The Appeals Council denied Plaintiff's request for review (R. at 1-5), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant meets the insured status requirements of the Social Security Act through March 31, 2012.
>
> (2) The claimant has not engaged in substantial gainful activity since September 30, 2009, the amended alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
>
> (3) The claimant has the following severe impairments: L4-L5 radicular syndrome with bilateral peroneal nerve neuropathy; lumbar stenosis; and lumbar spondylosis (20 CFR 404.1520(c) and 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitations: no lifting or carrying over 20 pounds occasionally and 10 pounds frequently; no standing and/or walking over 6 hours in an 8 hour workday; no more than occasional stooping, twisting, crouching, kneeling, crawling, balancing and/or climbing of ladders or scaffolds; avoidance of unprotected heights, vibration, and machinery with exposed, hazardous moving parts; and an environment free from extreme temperature.
>
> (6) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> (7) The claimant was born on October 2, 1964 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> (8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

>    (9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>    (10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
>    (11)    The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that supplemental security income (SSI) disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. *See* 42 U.S.C. § 1381 *et seq*. "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. *See* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); 42 U.S.C. § 1382c(a)(3)(A) (definition used in the SSI context).[2]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing

---

[2] "[T]he definition of disability is the same under both DIB and SSI . . . ." *Mason v. Colvin*, Civ. A. No. 9:12-1157-TLW-BM, 2013 WL 4042188, at *2 n.2 (citing *Emberlin v. Astrue*, Civ. A. No. 06-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

substantial gainful employment. *See* 20 C.F.R. § 404.1520 (DIB context); 20 C.F.R. § 416.920 (SSI context). If an individual is found not disabled at any step, further inquiry is unnecessary. *See* 20 C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context); *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i). He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *see also Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. *See Grant*, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *See id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

*Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The Plaintiff contends that the ALJ erred in failing to find him disabled. More specifically, Plaintiff alleges that the ALJ erred in rejecting the opinion of Dr. Riber, Plaintiff's long-term treating pain specialist, and in "fail[ing] to provide adequate reasons for his credibility determination." (Dkt. No. 12 at 20, 27 of 34.)

### A. Opinion of Dr. Riber

Plaintiff contends the ALJ erred in rejecting the opinion of Dr. Riber because the ALJ "failed to consider the length of Dr. Riber's relationship" with Plaintiff and stated, in a "conclusory" fashion, that the "medical evidence of record fails to support" Dr. Riber's opinion. (Dkt. No. 12 at 22-23 of 34.) In addition, Plaintiff contends the ALJ erred in discounting Dr. Riber's opinion because the fact that Plaintiff "benefitted from treatment" does not "equate with ability to work." (Dkt. No. 12 at 24 of 34.) Finally, Plaintiff asserts the ALJ erred in rejecting Dr. Riber's opinion as based on Plaintiff's subjective complaints because his "opinions were sufficiently supported by objective medical evidence." (Dkt. No. 12 at 26 of 34.)

In an opinion dated November 27, 2012, Dr. Riber answered "yes" to the following question: "Do you believe, based on a reasonable degree of medical certainty, Mr. Smith's chronic, intractable low back pain and lower left extremity pain result in an inability for him to ambulate effectively?" (R. at 384.) Dr. Riber opined that Plaintiff was able to sit for three hours, and stand or walk for two hours, in an eight hour workday. (*Id*.) Although Dr. Riber indicated that Plaintiff was able to use his right foot for repetitive movements, Plaintiff could not use his left foot for such movements. (*Id*.) Dr. Riber stated his opinion that Plaintiff was able to lift or carry up to ten pounds occasionally during

5

an eight hour workday but never more than ten pounds. (R. at 385.) Dr. Riber indicated that Plaintiff was never able to climb, balance, stoop, kneel, crouch, or crawl. (*Id*.) Dr. Riber opined that Plaintiff suffered from fatigue due to the "combination of chronic intractable pain along with the past surgical dysfunction and medication." (*Id*.) Dr. Riber stated that Plaintiff's fatigue was "disabling to the extent that it prevents [Plaintiff] from working fulltime at even . . . a sedentary position." (*Id*.) Dr. Riber indicated that Plaintiff suffers from pain and that the following is a "reasonable medical basis" for Plaintiff's pain: "initial injury, documented pathology, and S/P 2 different back surgeries." (*Id*.) Dr. Riber indicated that Plaintiff's pain medication moderately affected Plaintiff's attention and concentration. (R. at 386.) Finally, Dr. Riber stated that he believed Plaintiff's pain was "disabling to the extent that it would prevent him from working fulltime at even a sedentary position" from September 30, 2009. (*Id*.)

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545; 20 C.F.R. § 416.945; *see also* 20 C.F.R. § 404.1527; 20 C.F.R. § 416.927. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2). Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency,

6

and whether the treating physician was a specialist. 20 C.F.R. § 404.1527(c)(1)-(5); 20 C.F.R. § 416.927(c)(1)-(5). Even so, "the rule does not require that the [treating physician's opinions] be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam) (citing *Campbell v. Bowen*, 800 F.2d 1247, 1250 (4th Cir. 1986)).[3] The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 1996 WL 374188, at *5; *see also* 20 CFR § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2).

> In assessing Dr. Riber's opinions, the ALJ stated,
>
> Finally, on November 27, 2012, Dr. Riber issued a medical source statement wherein he indicated that the claimant is limited to less than sedentary exertion, including sitting only three hours in an eight-hour workday; standing/walking only two hours in an eight-hour workday; lifting/carrying no more than 10 pounds occasionally; and no full-time work even at a sedentary level (Exhibit 11F). The medical evidence of record fails to support this medical source statement, and Dr. Riber's treatment notes show some decent control of the claimant's pain with sustained pain management. Furthermore, the credibility factors cited above indicate that the claimant's subjective allegations of pain, which appear to be a partial basis for this medical source statement, are not entirely reliable. Thus, I find that this medical source statement is entitled to little evidentiary weight.

(R. at 74-75.)

Plaintiff first contends the ALJ erred in rejecting Dr. Riber's opinion because the ALJ "failed to consider the length of Dr. Riber's relationship" with Plaintiff. (Dkt. No. 12 at 22 of 34.) The undersigned finds no reversible error on this point. "[T]he Fourth Circuit has not mandated an express discussion of each factor" in 20 C.F.R. § 404.1527(c) or 20 C.F.R. § 416.927(c), and "another court in this district has held that 'an express discussion of each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons for his decision.'" *Dellinger v. Colvin*, Civ. A. No. 6:14-cv-1150-DCN, 2015 WL 5037942, at *3 (D.S.C. Aug. 26, 2015) (quoting *Hendrix v. Astrue*, Civ. A. No. 1:09-cv-1283-HFF, 2010 WL 3448624, at

---

[3]*But see* 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."); *see also* 20 C.F.R. § 416.927(c)(2).

7

*3 (D.S.C. Sept. 1, 2010)). Here, the ALJ noted that Plaintiff "began receiving pain management from Dr. Riber as early as January 3, 2005" and that the record contained treatment notes from Dr. Riber through August of 2012. (*See* R. at 72.) Given that the ALJ's decision indicates that he thoroughly reviewed Dr. Riber's treatment notes and considered Dr. Riber's opinions, the undersigned finds no reversible error in the ALJ's failure to explicitly discuss the length of Dr. Riber's treatment relationship with Plaintiff.

Plaintiff also asserts error in the ALJ's rejection of Dr. Riber's opinion by stating, in a "conclusory" fashion, that the "medical evidence of record fails to support" Dr. Riber's opinion, and in rejecting Dr. Riber's opinion as based on Plaintiff's subjective complaints because Dr. Riber's "opinions were sufficiently supported by objective medical evidence." (Dkt. No. 12 at 23, 26 of 34.) Albeit in a different paragraph, the ALJ does state,

> [T]he treatment notes during the period in question demonstrate that the claimant's conditions have been managed by conservative care and treatment via persistent pain management. Moreover, those records show some generally good responses to treatment. For example, on June 24, 2011, Dr. Riber noted adequate control of the claimant's pain due to pain management efforts (Exhibit 3F). On July 2, 2012, Dr. Riber again noted good control with pain management modalities (Exhibit 10F).

(R. at 74.)

Having carefully reviewed Dr. Riber's notes and the ALJ's decision, the undersigned finds no error. Plaintiff asserts that Dr. Riber's "opinions were not inconsistent with the opinions of Drs. Holbrook, Johnson, or Stewart, all of which the ALJ rejected." (Dkt. No. 12 at 23 of 34.) However, the ALJ's determination that these opinions were entitled to little evidentiary weight is supported by substantial evidence: "the record shows that the claimant has worked [since these opinions were provided], and these opinions significantly predate the amended alleged onset date of September 30, 2009." (R. at 74.) The ALJ also stated he gave little weight to Dr. Riber's opinions because the "treatment notes show some decent pain control of the claimant's pain with sustained pain management" and because Plaintiff's "subjective allegations of pain . . . appear to be a partial basis" for his statement. (R. at 75.) In the opinion of the undersigned, there is substantial evidence for that

conclusion. Plaintiff asserts the ALJ erred in discounting Dr. Riber's opinion because the fact that Plaintiff "benefitted from treatment" does not "equate with ability to work." (Dkt. No. 12 at 24 of 34.) In the case *sub judice*, however, Dr. Riber's records go far beyond saying that Plaintiff benefitted from treatment.

On May 20, 2010, Plaintiff had a transforaminal injection (R. at 298.) Dr. Riber's notes from August 6, 2010 indicate that Plaintiff had a "[g]ood response to most recent treatment almost 3 months ago" and that Plaintiff had "[r]easonably good pain relief with current medications." (R. at 299.) On October 27, 2010, Dr. Riber again noted that Plaintiff achieved "[r]easonably good pain relief with current medications." (R. at 300.) Dr. Riber's notes from April 26, 2011, which indicate Plaintiff received another transforaminal injection, indicated that Plaintiff had "[v]ery good quality relief from previous transforaminal block, most recently 11 months ago (May 2010)." (R. at 315.) When Dr. Riber saw Plaintiff on May 23, 2011, Plaintiff reported his pain to be severe, but Plaintiff had been out of medication for several days. (R. at 313.) Dr. Riber's notes from June 24, 2011 indicate that at the Plaintiff's last office visit, he reported increased muscle spasms, for which Dr. Riber increased the prescription for Soma, and Plaintiff "report[ed] very good relief with this." (R. at 312.) Dr. Riber's notes again state that Plaintiff reported "he is getting adequate pain control with his current medications." (R. at 312.)

Dr. Riber's notes from August 19, 2011 indicate that Plaintiff received "excellent relief" from the lumbar support prescribed at the last visit. (R. at 376.) Dr. Riber's notes further state that the Plaintiff reported the lumbar support "has helped him increase his activities of daily living and given him more relief after he says he is active." (R. at 376.) According to Dr. Riber's notes from September 16, 2011, Plaintiff reported severe pain. (R. at 377.) The notes from that day further state that Plaintiff "responds well to interventional treatments," so Dr. Riber planned to "[r]epeat transforaminal blocks at L5-S1." (R. at 377.) Dr. Riber's notes from March 8, 2012 indicate that Plaintiff did not receive "as good of a response as normal" to his last block due to some significant personal issues. (R. at 379.) Dr. Riber's plan indicated that the nerve block would be repeated. (R.

at 379.) His notes further state that Plaintiff "generally responds well to conservative and interventional treatment." (R. at 379.) According to Dr. Riber's notes from August 1, 2012, Plaintiff "states his medications are working well for him and he denies any side effects." (R. at 382.)

While the records do not indicate that Plaintiff was pain free, they certainly support the ALJ's conclusion that the "medical evidence of record fails to support" Dr. Riber's opinions. Dr. Riber's notes are replete with references indicating that Plaintiff received adequate pain control through Dr. Riber's treatment; this constitutes substantial evidence for discounting Dr. Riber's opinions. *See, e.g., Peck v. Astrue*, Civ. A. No. 5:10-2625-MBS-KDW, 2012 WL 967090, at *12 (D.S.C. Mar. 20, 2012) (upholding ALJ's decision to discredit treating physician's opinions where, *inter alia*, physician's notes indicated the plaintiff received "significant pain relief" from treatment); *see also Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.").

### B. Plaintiff's Credibility

Plaintiff asserts the ALJ erred in assessing Plaintiff's credibility because "each of the ALJ's reasons" for finding Plaintiff not to be credible "are faulty or are not supported by the record evidence." (Dkt. No. 12 at 27 of 34.) First, Plaintiff asserts that his "unquantified daily activities do not prove him incredible." (*Id*. at 28.) Plaintiff also contends the ALJ erred in relying on "conservative treatment and improvement with treatment" to reject Plaintiff's allegations. (*Id*. at 29 of 34.) Finally, Plaintiff argues that the ALJ erred in discounting Plaintiff's claim of disability due to Plaintiff's failure to obtain treatment because the ALJ failed to consider Plaintiff's explanations for failing to comply with treatment recommendations. (*Id*. at 31 of 34.)

As stated in *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996), "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 594. First, the plaintiff must present "objective medical evidence showing the existence of a medical impairment(s) which results from the anatomical, physiological, or psychological abnormalities and which could

reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks and citations omitted). The Fourth Circuit explained as follows:

> It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. *See* 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1). Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, *see id.*; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), *see* 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, *see* 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3).

*Craig*, 76 F.3d at 595; *see also* SSR 96-7p, 1996 WL 374186, at *3 (listing factors "the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements").

In the instant case, the ALJ stated, *inter alia*,

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> In terms of the claimant's alleged symptoms and limitations, which, as explained above, include chronic pain, which causes postural and exertional limitations, including a diminished capacity for sitting, standing, walking, lifting, and carrying; lower extremity weakness and numbness; muscle spasms, cramps, and swelling; disturbed sleep; an occasional need to ambulate with an assistive device; deficits in attention, concentration, completing tasks, understanding, and using his hands; and an inability to tend to the full spectrum of routine daily tasks, I find his allegations unpersuasive and incredible; moreover, the merit of these assertions is further eroded by a number of factors that indicate that his condition did not rise to the level of severity that was alleged.
>
> First, the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The record shows that the claimant retains the ability for an impressive spectrum of activities of daily living, including rendering child care; helping to maintain a household; performing some household chores; preparing at least simple meals;

11

> tending to his personal care; following television programming; shopping in stores; walking; driving a car; and using public transportation (Exhibit 9E and testimony).
>
> Next, the treatment notes during the period in question demonstrate that the claimant's conditions have been managed by conservative care and treatment via persistent pain management. Moreover, those records show some generally good responses to treatment. For example, on June 24, 2011, Dr. Riber noted adequate control of the claimant's pain due to pain management efforts (Exhibit 3F). On July 2, 2012, Dr. Riber again noted good control with pain management modalities (Exhibit 10F).
>
> Beyond that, it is clear that, at all times, the claimant has failed to fully avail himself of all reasonably recommended medical treatment. For example, on January 22, 2010, treatment notes from Dr. Riber show that the claimant refused an offer for treatment with a spinal cord stimulator, as recommended by Dr. Riber (Exhibit 1F). Once more, this failure on the part of the claimant illustrates that his allegations suggest greater severity than does the objective evidence.
>
> Thus, these various factors, when considered together and in light of the overall evidentiary record, completely erode the veracity of the claimant's subjective allegations and render them incredible.

(R. at 73-74) The ALJ also used the Plaintiff's credibility determination as one of the reasons for discounting Dr. Riber's opinions. (*See* R. at 75.)

While the ALJ's characterization of Plaintiff's activities of daily living as an "impressive spectrum" seems a bit of an overstatement, the undersigned finds no reversible error. Daily activities are a relevant component of a credibility analysis. *See* SSR 96-7p, 1996 WL 374186, at *3; *see also* 20 C.F.R. § 404.1529(c)(3)(i); 20 C.F.R. § 416.929(c)(3)(i). At the hearing, Plaintiff testified that he "get[s] the kids ready for school" and irons their clothes. (R. at 48-49.) He stated that after the children leave for school, he "tr[ies] to clean up a little because . . . they make a mess." (R. at 50.) Plaintiff testified he would then make himself some breakfast, maybe a bologna sandwich or some grits. (R. at 50.) Plaintiff testified that after breakfast, he watches television until approximately lunchtime. (R. at 50.) Plaintiff stated that he walks about ten to fifteen minutes out of an hour. (R. at 51.) After he has a quick lunch, Plaintiff testified that he would either sit or lay down. (R. at 51.)

As stated in *Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005), the court "cannot make credibility determinations," but must "review the ALJ's decisions for substantial evidence." *Johnson*,

434 F.3d at 658. Given the evidence in the record concerning Plaintiff's activities, the undersigned finds no reversible error in this portion of the ALJ's credibility analysis. *See id.* (noting that a claimant's routine activities including reading, cooking, attending church, cleaning house, doing laundry, and visiting were inconsistent with her complaints); *see also Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (upholding a finding of no disability where claimant "generally t[ook] care of a house," grocery shopped, cooked, washed dishes, and walked to town every day).

Plaintiff also contends the ALJ erred in relying on "conservative treatment and improvement with treatment" to reject Plaintiff's allegations. (Dkt. No. 12 at 29 of 34.) While the undersigned agrees with Plaintiff that two back surgeries is not conservative treatment, Plaintiff had those two surgeries several years before his amended alleged disability onset date. Furthermore, it is worth noting that even Dr. Riber indicated in March of 2012 that Plaintiff "generally responds well to conservative and interventional treatment." (R. at 379.) Additionally, as detailed above, the record contains a significant amount of evidence that Dr. Riber's course of treatment adequately managed Plaintiff's pain. The ALJ did not err. *See, e.g., Gross*, 785 F.2d at 1166 ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."); *see also Green v. Astrue*, Civ. A. No. 3:10CV764, 2011 WL 5593148, at *4 (E.D.Va. Oct. 11, 2011), adopted by 2011 WL 5599421 (E.D. Va. Nov. 17, 2011) ("An individual does not have to be pain-free in order to be found 'not disabled'. . . .").

Finally, Plaintiff argues that the ALJ erred in discounting Plaintiff's claim of disability due to Plaintiff's failure to obtain treatment because the ALJ failed to consider Plaintiff's explanations for failing to comply with treatment recommendations. (*Id.* at 31 of 34.) While Plaintiff's argument may have some merit, *see Lovejoy v. Heckler*, 790 F.2d 1114 (4th Cir. 1986); *Preston v. Heckler*, 769 F.2d 988 (4th Cir. 1985),[4] the undersigned concludes reversal is not warranted. As detailed above, the ALJ did not err in his credibility analysis as to Plaintiff's activities of daily living or in his

---

[4] Both of these cases involved, at least in some portion, the plaintiff's inability to afford treatment. *See Lovejoy*, 790 F.2d at 1117; *Preston*, 769 F.2d at 990.

13

analysis of Plaintiff's "conservative care and treatment"; that credibility analysis is supported by substantial evidence. "Routinely, Courts have found harmless error where only one or a few reasons among many were improper, where the remaining bases constitute substantial evidence." *Johnston v. Colvin*, Civ. A. No. 9:13-cv-2098-BHH-BM, 2015 WL 893064, *3 (D.S.C. Mar. 3, 2015) (affirming Commissioner's decision and citing *Mickles v. Shalala*, 29 F.3d 918 (4th Cir. 1994)). Accordingly, having found that the Commissioner's credibility analysis is supported by substantial evidence, the undersigned recommends affirming the Commissioner's decision.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

January 27, 2016
Charleston, South Carolina